# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| ASHLEY BROWN, | ) | |
| | ) | JURY DEMAND |
| Plaintiff, | ) | |
| | ) | Case No. |
| vs. | ) | |
| | ) | Judge: |
| THE CITY OF MURFREESBORO, | ) | |
| TENNESSEE, | ) | Magistrate Judge: |
| | ) | |
| Defendant. | ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### I.   NATURE OF THE CASE

1.     Plaintiff, Ashley Brown ("Brown" or "Plaintiff"), by and through counsel, brings this action against  Defendant, the City of Murfreesboro, Tennessee ("the City" or "Defendant"), for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C § 2000e *et. seq.*, the Americans with  Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101 *et. seq.*, the Tennessee Human Rights Act ("TRHA"), Tenn. Code Ann. § 4-21-101, *et. seq.*, the Tennessee Disability Act ("TDA"), Tenn. Code Ann. § 8-50-103, *et. seq.*, and retaliatory discharge in violation of Tennessee common law and public policy.

### II.   PARTIES

2.     Brown is a resident of Rutherford County, Tennessee who, at all relevant times  to this action, resided within the geographical boundaries of the Middle District of Tennessee.

3.     Defendant is a municipality located within the geographical boundaries of the Middle District of Tennessee – Rutherford County, Tennessee.

### III.   JURISDICTION AND VENUE

4.     Jurisdiction is conferred on this Court over the subject matter of this litigation pursuant to 28 U.S.C. § 1331; 28 U.S.C. § 1343; 28 U.S.C. § 1367(a); 42 U.S.C. § 2000e-5(f)(3);

42 U.S.C. § 12117; the THRA; and the TDA.

5. Brown was an "employee," as that term is defined by 42 U.S.C. §§ 2000e(f), 12111(4), the THRA, the TDA, and Tenn. Code. Ann. § 50-6-102(10).

6. The City is an "employer," as that term is defined by 42 U.S.C. §§ 2000e(b), 12111(5)(A), the THRA, the TDA, and Tenn. Code. Ann. § 50-6-102(11).

7. At all relevant times, Brown was an individual with a "disability," as that term is defined by 42 U.S.C.§ 12102. The City was aware of Brown's disability, had a written record of Brown's disability, and/or regarded Brown as disabled.

8. Brown is a "qualified individual with a disability," as defined by 42 U.S.C.§ § 12102 and 12111.

9. Brown satisfied her obligation to exhaust her administrative remedies, having timely filed a Charge of Discrimination (Charge No. 494-2025-04857) with the U.S. Equal Employment Opportunity Commission ("EEOC") against the City, alleging discrimination based on her sex, sexual orientation, and disability, and retaliation. Brown received the required Notice of Suit Rights and timely files this action.

10. Brown's state law claims arise from the same common nucleus of operative facts as her federal law claims and all of her claims form a single case and controversy under Article III of the United States Constitution.

11. A substantial part of the events, transactions, and occurrences concerning this case arose in the geographical environs of the Middle District of Tennessee; thus, venue is proper in this Court.

### IV.    FACTUAL ALLEGATIONS

12. Brown is a disabled, homosexual female.

13. Brown began working for the City's Parks and Recreation Department on or about

November 6, 2023, as a Groundskeeper.

14. When Brown began working for the City, she was a one hundred percent (100%) disabled veteran.

15. At all relevant times, Brown met or exceeded the City's legitimate performance expectations.

16. Throughout her employment, Brown's supervisor, Mark Brown ("Supervisor Brown"), subjected Brown to sex discrimination based upon her gender and sexual orientation.

17. Supervisor Brown informed Brown that he did not approve of same-sex marriages. Throughout her employment, Supervisor Brown told Brown that he was praying for her at his church. On one occasion, Supervisor Brown instructed the City's only other female Groundskeeper to stay away from Brown.

18. Supervisor Brown engaged in a pattern and practice of disparate treatment toward Brown and the only other female Groundskeeper. Supervisor Brown consistently assigned Brown and her female co-worker to tasks the male Groundskeepers did not want to perform and subjected their work performance to unreasonable and increased scrutiny. Additionally, Supervisor Brown divided the Groundskeepers into two (2) teams – an all-male team and an all-female team – and gave preferential treatment to the all-male team.

19. Additionally, Brown's heterosexual male co-workers subjected her to repeated harassment because of her sexual orientation and gender. Throughout her employment, Brown's heterosexual male co-workers harassed her on the basis of her sexual orientation. Brown was told multiple times that gay marriage was wrong, and she was asked inappropriate questions such as, "have you ever scissored?"

20. In or around December 2023, the City instructed its employees to stay home due to snow, but Brown was one of the few called in to shovel snow and distribute salt. After working approximately two to three (2-3) days doing snow removal, Brown was informed that she would

3

not be compensated because the shift was considered "volunteer hours" as a result of Supervisor Brown's failure to obtain prior authorization for the additional work.

21.     In or around December 2023 or January 2024, false rumors began circulating among the Parks and Recreation Department, and Brown was accused of engaging in an ongoing sexual relationship with her female co-worker. Brown engaged in protected activity and complained to Supervisor Brown after she learned of the rumors in or around late March or early April 2024. Supervisor Brown failed to take corrective action.

22.     In or around early April 2024, Supervisor Brown began assigning an increased and disparate workload to Brown and her female co-worker. Brown and her female co-worker were forced to skip lunch and rest breaks and work Saturdays to complete their assigned tasks. On or about May 8, 2024, Brown met with Lead Groundskeeper, Eddie Willis ("Willis"), to discuss the disparate workload, and Willis stated, "The boys said you aren't doing enough."

23.     On or about June 4, 2024, the Groundskeepers assisted the Natural Resource Division with their annual trail clean-up. Natural Resource Supervisor, Kristen [last name unknown] ("Kristen"), told Brown and her female co-worker that they could leave once they completed their portion of the job. Following completion, Brown and her female co-worker left to finish cutting their weekly parks. Willis contacted Brown after her male co-workers falsely accused her of skipping out of the job. Despite Brown's explanation, which was confirmed by Kristen, Willis called Brown and her female co-worker "liars." Thereafter, Willis began following Brown and micromanaging her.

24.     On or about June 12, 2024, Brown and two heterosexual male co-workers provided assistance during a flood. Thereafter, the male co-workers received awards from the City but Brown did not.

25.     On or about July 8, 2024, Willis assigned an additional location to Brown and her female co-worker. Willis explained that their male co-workers continued to complain that Brown

4

and her female co-worker were not doing enough.

26. On or about July 31, 2024, Willis met with Brown and her female co-worker and informed them that their parks did not look good enough. On or about August 1, 2024, Brown engaged in protected activity and complained of disparate treatment and harassment by Willis and her male co-workers. Supervisor Brown failed to take corrective action.

27. On or about August 9, 2024, Willis questioned Brown's whereabouts, and Brown explained that she and her female co-worker were speaking to the City's Human Resources ("HR") Department to enroll in counseling services.

28. On or about August 22, 2024, Brown suffered a work-related injury to her right shoulder while cutting trees. Upon being injured, Brown notified Lead Groundskeeper, Jacob Mansfield ("Mansfield") and Willis. On or about August 26, 2024, Brown's physician instructed her to file a workers' compensation claim. On or about August 27, 2024, Brown spoke to Mansfield and Willis and requested to file a workers' compensation claim but no action was taken. Brown also reported her work-related injury to Supervisor Brown, but he took no action. As a result, Brown was not offered medical care and protected disability leave. Over the following fifty-four (54) days, Brown was forced to continue performing manual labor duties, which exacerbated her injury.

29. In or around early September 2024, Brown and her female co-worker were assigned an additional task – City Beautification.

30. On or about September 3, 2024, Mansfield put his arms around a heterosexual male co-worker, kissed him dramatically, and told Brown that they were in a sexual relationship. Brown's co-workers frequently taunted her by making fabricated romantic advances toward one another to make fun of her sexual orientation.

31. On or about September 20, 2024, Brown applied for a foreman position with the City. Brown was qualified for the position.

5

32. On or about October 4, 2024, while engaged in a conversation with Supervisor Brown, Charging Party stated that she was never getting married again. Supervisor Brown responded, "Well, hopefully, if you do, it's a man next time."

33. On or about October 9, 2024, Brown and her female co-worker were instructed to plant flowers for the City Beautification Task. Brown's work-related injury made it difficult for her to dig holes. Brittany Garrett ("Garrett"), a supervisor with the Athletics Department, asked Brown what was wrong, and Brown stated that she had suffered a work-related injury that her supervisors refused to report. In response, Garrett accused Brown of lying.

34. On or about October 15, 2024, Brown informed Willis that her shoulder injury prevented her from doing barricade work. Thereafter, Brown met with Willis and Supervisor Brown to discuss her job duties and injury. Supervisor Brown criticized Brown's work ethic, accused her of being a bad influence, and threatened to terminate her employment. Supervisor Brown then issued a verbal warning to Brown. In response, Brown explained that her work-related injury made it difficult to perform certain tasks and stated that their failure to address her work-related injury was illegal. Mr. Brown stated, "We don't believe you," and issued a verbal warning to Brown. Later that day, Supervisor Brown initiated Brown's workers' compensation claim by backdating a First Report of Injury to August 22, 2024.

35. On or about October 16, 2024, Brown asked Willis if she could discuss her work-related concerns with Executive Director, Nate Williams ("Williams"). On or about October 17, 2024, Brown met with Williams and engaged in protected activity, complaining of sex discrimination and harassment by Supervisor Brown, Willis, Mansfield, and her male co-workers. Brown also complained of disability discrimination and her supervisors' refusal to file a claim for workers' compensation benefits. Williams failed to take corrective action.

36. In or around mid-October 2024, Brown's workers' compensation physician scheduled a surgical procedure for November 1, 2024. The City was notified of Brown's upcoming

6

medical-related absence.

37. On or around October 31, 2024, Brown attended a Halloween event hosted by the City. Two (2) heterosexual male co-workers attended the event dressed as characters from *Brokeback Mountain*, a movie which portrays the romantic relationship between two (2) men. In the presence of Brown and others, the co-workers mocked same-sex relationships while in costume.

38. Brown utilized continuous FMLA leave throughout November 2024 as a result of her shoulder surgery.

39. On or about December 3, 2024, Brown engaged in protected activity and filed a Charge of Discrimination with the EEOC.

40. On or about December 6, 2024, Brown was informed that Supervisor Brown helped a heterosexual male co-worker obtain a Lead Maintenance, which Supervisor Brown had previously declined to recommend her for.

41. On or about December 17, 2024, Brown engaged in protected activity and reported sex and disability discrimination and harassment to the City's Human Resources ("HR") Department. The HR representative dismissed the Halloween costume incident as a joke and failed to take corrective action.

42. Brown utilized several days of vacation leave beginning December 19, 2024.

43. On or about February 3, 2025, Brown was released to full duty work and assigned to cut tree limbs, largely without assistance. As a result, Brown re-injured her shoulder.

44. On or about February 4, 2025, Brown requested to work more slowly to reasonably accommodate her shoulder injury. Supervisor Brown declined to accommodate Brown's injury because she had been released to full duty work. Brown was then assigned to dig large holes and plant 500-pound trees, which she had to do manually. Supervisor Brown remained on site to supervise Brown.

7

45. That same day, Supervisor Brown texted Brown and asked her to meet with him. Brown requested the presence of a third person because she was uncomfortable, and Shane Phillips ("Phillips") attended. During the meeting, Supervisor Brown accused Brown of gossiping. Brown denied gossiping and complained of sex and disability discrimination and retaliation. Supervisor Brown requested intervention by Williams, who questioned Brown and accused her of lying.

46. After the meeting, Brown's female co-worker transported Brown to the hospital at the Department of Veterans' Affairs ("VA"). Brown was taken off work due to an exacerbation of her post-traumatic stress disorder ("PTSD"). Upon notifying the City, Brown requested and was granted FMLA leave.

47. On or about February 9, 2025, Brown engaged in protected activity and reported Supervisor Brown and Williams to HR. Brown told Assistant Director of HR, Rhonda Darnell ("Darnell"), that the discrimination and retaliation was causing her to contemplate suicide. The City failed to take corrective action.

48. Brown's FMLA leave expired on March 20, 2025, and she was granted medical leave through June 17, 2025, to reasonably accommodate her injury-related restrictions. Brown also applied for long-term disability benefits.

49. During her FMLA and medical leave, Brown attended multiple doctor's appointments to assess her shoulder injury. On or about July 2, 2025, Brown informed Darnell that her physician recommended shoulder replacement surgery. Ten (10) minutes later, Darnell sent Brown a Notice of Proposed Disciplinary Action – Termination of Employment letter from Williams dated June 30, 2025.

50. On or about July 8, 2025, Brown received a Notice of Termination letter from City Manager, Darren Gore. The letter stated that Brown was terminated because she was released to return to work with restrictions that could not be accommodated. At that time, Brown was only restricted from performing overhead work.

8

51. Brown was discriminated against based on her sex and disability, and retaliated against in violation of Title VII, the ADA, the THRA, the TDA, and Tennessee common law and public policy.

## V.     CAUSES OF ACTION

### COUNT I: TITLE VII & THRA – SEX DISCRIMINATION

52. Brown hereby incorporates paragraphs one (1) through fifty-one (51) of her Complaint as if the same were set forth at length herein.

53. Brown is a homosexual female.

54. Brown was subjected to a hostile work environment and disparate treatment by the City because of her gender and sexual orientation.

55. The hostile work environment unreasonably interfered with Brown's ability to perform her job duties and responsibilities. The harassment was objectively intimidating, hostile, and/or offensive.

56. The City violated Brown's rights to be free from a hostile work environment by subjecting and/or allowing Brown to be subjected to increased scrutiny and repeated acts of harassment that created an intimidating, hostile and/or offensive work environment, by assigning disproportionate job duties, by refusing to take corrective action each time Brown put the City on notice, and by terminating her employment because of her gender.

57. The City's actions were intentional, willful, and taken in reckless disregard of Brown's rights as protected by Title VII and the THRA.

58. Brown has suffered and continues to suffer damages as a result of the City's unlawful actions.

### COUNT II: ADA & TDA – DISABILITY DISCRIMINATION

59. Brown hereby incorporates paragraphs one (1) through fifty-eight (58) of her Complaint as if the same were set forth at length herein.

9

60. Brown is a disabled individual. The City was aware of Brown's disabilities and/or regarded Brown as disabled and/or has a written record of Brown's disabilities.

61. The City violated Brown's rights as protected by the ADA and the TDA by subjecting and/or allowing Brown and/or allowing Brown to be subjected to a hostile work environment, disparate treatment, and increased scrutiny, by failing to reasonably accommodate her, by failing to engage in the interactive process, by refusing to take corrective action each time Brown put the City on notice, and by terminating Brown's employment because of her disabilities.

62. The City's actions were intentional, willful, and taken in reckless disregard of Brown's rights as protected by ADA and the TDA.

63. Brown has suffered and continues to suffer damages as a result of the City's unlawful actions.

### COUNT III: TITLE VII & THRA – RETALIATION

64. Brown hereby incorporates paragraphs one (1) through sixty-three (63) of her Complaint as if the same were set forth at length herein.

65. Brown engaged in protected activity each time she made internal and external complaints of discrimination and harassment because of her gender and sexual orientation.

66. The City retaliated against Brown for engaging in protected activity by subjecting and/or allowing Brown to be subjected to increased scrutiny and repeated acts of harassment that created an intimidating, hostile and/or offensive work environment, by assigning disproportionate job duties, by refusing to take corrective action each time Brown put the City on notice, and by terminating her employment.

67. The City's actions were intentional, willful, and taken in reckless disregard for Brown's rights as protected by Title VII and the THRA.

68. Brown has suffered and continues to suffer damages as a result of the City's unlawful actions.

10

## COUNT IV: ADA & TDA – RETALIATION

69.     Brown hereby incorporates paragraphs (1) through sixty-eight (68) of her Complaint as if the same were set forth at length herein.

70.     Brown engaged in protected activity each time she made internal and external complaints of discrimination and harassment and each time she requested reasonable accommodation.

71.     The City retaliated against Brown for engaging in protected activity by subjecting and/or allowing Brown to be subjected to a hostile work environment, disparate treatment, and increased scrutiny, by failing to reasonably accommodate her, by failing to engage in the interactive process, by refusing to take corrective action each time Brown put the City on notice, and by terminating Brown's employment because of her disabilities.

72.     The City's actions were intentional, willful, and taken in reckless disregard for Brown's rights as protected by Title VII and the THRA.

73.     Brown has suffered and continues to suffer damages as a result of the City's unlawful actions.

## COUNT V: RETALIATORY DISCHARGE IN VIOLATION OF TENNESSEE COMMON LAW & PUBLIC POLICY

74.     Brown hereby incorporates paragraphs one (1) through seventy-three (73) of her Complaint as if the same were set forth at length herein.

75.     Brown was an at-will employee of the City.

76.     Brown suffered a work-related injury and thereafter filed a claim to receive workers' compensation benefits in accordance with her statutory rights pursuant to Tenn. Code Ann. § 50-6-101 *et seq.*

77.     Brown's claim for workers' compensation benefits was a substantial motivating factor in the City's decision to terminate her employment.

11

78. The City's actions were willful, intentional, and taken in reckless disregard for Brown's rights as protected by Tennessee common law and public policy.

79. Brown has suffered and continues to suffer damages as a result of the City's unlawful actions.

## VI. <u>REQUESTED RELIEF</u>

WHEREFORE, Plaintiff, Ashley Brown, by and through counsel, respectfully requests that this Court enter judgment in her favor and award the following relief:

1. Permanently enjoin Defendant from engaging in any employment policy or practice that discriminates against an employee based on their sexual orientation, gender, or disability;

2. Reinstate Plaintiff to her previous position with concomitant pay, salary, and benefits, or award front pay in lieu thereof;

3. Award Plaintiff all wages, benefits, compensation, and other monetary loss suffered as a result of Defendant's unlawful actions;

4. Award Plaintiff compensation for any and all other damages suffered as a consequence of Defendant's unlawful action(s);

5. Award Plaintiff compensatory damages, consequential damages, and damages for mental, emotional, and physical distress;

6. Award Plaintiff all costs and attorney's fees incurred as a result of bringing this action;

7. Award Plaintiff pre- and post-judgment interest on all sums recoverable; and

8. Award Plaintiff all other legal and/or equitable relief this Court sees fit to grant.


Respectfully Submitted,

 */s/ Madalyn Johnson*
Madalyn Johnson, TBPR No. 042798

12

Kyle F. Biesecker, TBPR No. 028872
BIESECKER DUTKANYCH & MACER, LLC
3200 West End Ave., Suite 500
Nashville, TN 37202
Telephone: (615) 392-6444
Email: mjohnson@bdlegal.com
      kfb@bdlegal.com

*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff, Ashley Brown, by and through counsel, requests a trial by jury on all issues deemed so triable.

Respectfully Submitted,

*/s/ Madalyn Johnson*

Madalyn Johnson, TBPR No. 042798
Kyle F. Biesecker, TBPR No. 028872
BIESECKER DUTKANYCH & MACER, LLC
3200 West End Ave., Suite 500
Nashville, TN 37202
Telephone: (615) 392-6444
Email: mjohnson@bdlegal.com
      kfb@bdlegal.com

*Attorneys for Plaintiff*

13